
EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

NESTOR ALMONTE,

                    Plaintiff,

        v.

437 MORRIS PARK, LLC D/B/A F&T MANAGEMENT
CO., 1195 SHERMAN AVE. LLC,
SHERMAN MANAGEMENT CO. D/B/A SHERMAN
MANAGEMENT ASSOCIATES LLC, CHARLES
"CHARLIE" CLARKE, KALMAN TABAK
and ABRAHAM FLUKELSTEIN,

                    Defendants,

------------------------------------------------------------------x

**FIRST AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

Index No.:  14-cv-5951 KPF

Plaintiff Nestor Almonte (hereinafter "Plaintiff" or "Almonte") by and through his attorneys Valli Kane & Vagnini LLP, hereby alleges violations of Federal and State wage and hour laws pertaining to minimum wage and overtime pay as against Defendants 437 Morris Park LLC D/B/A F&T Management Co. ("Morris Park"), 1195 Sherman Ave. LLC ("Sherman Ave"), Sherman Management Co. D/B/A Sherman Management Associates LLC ("Sherman Management"), Charles "Charlie" Clarke ("Clarke"), Kalman Tabak ("Tabak") and Abraham Flukelstein ("Flukelstein") (collectively referred to as "Defendants") as follows:

## INTRODUCTION

1.    This civil action arises from Defendants' flagrant and willful actions committed in violation of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207(a); (ii) the minimum wage provisions of the FLSA, 29 U.S.C. §206(a); (iii) the recordkeeping requirements of the FLSA, 29 U.S.C. §211(c); (iv) the

overtime provisions of the New York State Labor Law ("NYLL"), N.Y. Lab. Law §160 and the Compilation of New York Codes, Rules and Regulations ("NYCRR"), N.Y. Comp. Codes R. & Regs. tit. 12, §142-2.2; (v) the minimum wage provisions of the NYLL, N.Y. Lab. Law §652(1) and the NYCRR §142-2.1; (vi) the deductions from wages provision of the NYLL, N.Y. Lab. Law §193; (vii) the wage statements requirements of the NYLL, N.Y. Lab. Law §195(3); (viii) the requirements for "spread of hours" pay in the NYCRR §142-2.4; and (ix) any other claim(s) that can be inferred from the facts set forth herein.

2.      Defendants committed the aforementioned violations of these statutes by engaging in an intentional, willful and systematic scheme to deny Plaintiff of his rights.

3.      Plaintiff alleges, pursuant to the FLSA, that he is entitled to recover (1) back pay, (2) unpaid overtime, (3) liquidated damages, (4) attorney's fees and costs, and (5) interest.

4.      Plaintiff alleges, pursuant to the NYLL, that he is entitled to recover (1) back pay, (2) unpaid overtime, (3) liquidated damages, (4) attorney's fees and costs, and (5) interest.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. § 201 et. seq.

6.      The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367 (a), which confers supplemental jurisdiction over all non-federal claims arising from a common

nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this District.

## PARTIES

8.     Plaintiff has been aggrieved by Defendants' willful violations of the FLSA and NYLL. He is and has been, at all relevant times, a resident of Bronx County, State of New York. He is a former employee of Defendants.

9.     At all relevant times herein, Plaintiff was an "employee" within the meaning of the FLSA and NYLL; specifically, Plaintiff was a superintendent of multiple apartment buildings while in the employ of Defendants.

10.     Defendant Morris Park is a New York corporation registered and existing in the State of New York, maintaining its headquarters at 437 Morris Park Avenue, Bronx, New York 10460 and doing business in the State of New York.

11.     Upon information and belief, Defendant Flukelstein and Defendant Tabak (the "F" and "T," respectively of F&T Management Co.) are the owners of Defendant Morris Park.

12.     Defendant Sherman Ave is a New York corporation registered and existing in the State of New York, maintaining its headquarters at 406 Ave F, Brooklyn, New York 11218 and doing business in the State of New York.

3

13.     Defendant Sherman Management is a New York corporation registered and existing in the State of New York, maintaining its headquarters at 356 Marcy Avenue, Brooklyn, New York 11206.

14.     Upon information and belief, Defendant Morris Park is a corporation organized under the laws of the State of New York and has a principle place of business within Bronx County, New York.  Upon information and belief, the amount of qualifying annual volume of business for Defendant Morris Park LLC exceeds $500,000.00 and thus subjects the business to the FLSA's overtime requirements.   Additionally, Defendant Morris Park's employees are engaged in interstate commerce.  This independently subjects Defendant Morris Park to coverage under the FLSA.

15.     Upon information and belief, Defendant Sherman Ave is a corporation organized under the laws of the State of New York and has a principle place of business within Kings County, New York.  Upon information and belief, the amount of qualifying annual volume of business for Defendant Sherman Ave exceeds $500,000.00 and thus subjects the business to the FLSA's overtime requirements.  Additionally, Defendant Sherman Ave's employees are engaged in interstate commerce.  This independently subjects Defendant Sherman Ave to coverage under the FLSA.

16.     Upon information and belief, Defendant Sherman Management is a corporation organized under the laws of the State of New York and has a principle place of business within Kings County, New York.  Upon information and belief, the amount of qualifying annual volume of business for Defendant Sherman Management exceeds $500,000.00 and thus subjects the business to the FLSA's overtime requirements.   Additionally, Defendant Sherman

4

Management's employees are engaged in interstate commerce. This independently subjects Defendant Sherman Management to coverage under the FLSA.

17.     Upon information and belief, Defendant Clarke is a citizen of New York and resides in New York. Defendant Clarke is the Manager of Defendant Morris Park. He was the direct supervisor for Plaintiff. His duties and responsibilities included hiring and firing employees, giving work-related orders to Plaintiff, supervising and controlling employee schedules, determining the rate and method of payment of employee wages, and maintaining employment records. As such, Defendant Clarke was in control of the company's operations and is thus personally liable for unpaid wages.

18.     Upon information and belief, Defendant Tabak is a citizen of New York and resides in New York. Defendant Tabak is one of the Owners of Defendant Morris Park, and Landlord and Owner of one or more of the named properties, specifically 437 Morris Park Avenue and 1195 Sherman Avenue, located in Bronx, New York. His duties and responsibilities included hiring and firing employees, giving work-related orders to Plaintiff, supervising and controlling employee schedules, determining the rate and method of payment of employee wages, and maintaining employment records. As such, Defendant Tabak was in control of the company's operations and is thus personally liable for unpaid wages.

19.     Upon information and belief, Defendant Flukelstein is a citizen of New York and resides in New York. Defendant Flukelstein is one of the Owners of Defendant Morris Park, and Landlord and Owner of one or more of the named properties, specifically 437 Morris Park Avenue and 1195 Sherman Avenue, located in Bronx, New York. His duties and responsibilities included hiring and firing employees, giving work-related orders to Plaintiff, supervising and

controlling employee schedules, determining the rate and method of payment of employee wages, and maintaining employment records. As such, Defendant Flukelstein was in control of the company's operations and is thus personally liable for unpaid wages.

20.   Defendant Morris Park is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

21.   Defendant Sherman Ave is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

22.   Defendant Sherman Management is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

23.   Defendant Clarke is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

24.   Defendant Tabak is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

25.   Defendant Flukelstein is an employer within the meaning of the FLSA, 29 U.S.C. §203(d).

26.   Defendant Morris Park is an employer within the meaning of the New York Labor Law.

27.   Defendant Sherman Ave is an employer within the meaning of the New York Labor Law.

28.   Defendant Sherman Management is an employer within the meaning of the New

York Labor Law.

29.     Defendant Clarke is an employer within the meaning of the New York Labor Law.

30.     Defendant Tabak is an employer within the meaning of the New York Labor Law.

31.     Defendant Flukelstein is an employer within the meaning of the New York Labor Law.

## STATEMENT OF FACTS

32.     In or about February 2011, Plaintiff began employment with Defendants as a handyman.  Defendants intended to have Plaintiff serve as a handyman until he was properly trained to become a superintendent.  At the time of his hiring, Plaintiff notified Defendants that he did not have proper documentation to live or work in the United States.

33.     Defendants knowingly employ several people who do not have social security numbers, tax identification numbers or work authorization for the United States.

34.     Defendants pay the wages of several workers through a worker who has proper documentation.  Defendants' payroll issues several checks in the employee's name that has proper documentation; that worker then cashes the checks and disperses the wages to the other employees who do not have proper documentation.  For example, the superintendent at 1056 Boynton Avenue, Wilton Muñoz ("Muñoz"), regularly received multiple checks in his name, each with different amounts; he continuously cashed these checks and dispersed the proper funds to each employee who did not have proper documentation.

35.    Defendants hired Plaintiff knowing he did not have proper documentation to live or work in the United States.

36.    To avoid the potential legal ramifications of paying Plaintiff directly, Defendants agreed to pay Plaintiff's through his brother-in-law, Mr. Muñoz: Plaintiff's brother-in-law would receive checks intended for Plaintiff's compensation, cash the checks and give Plaintiff the cash.

37.    As a handyman, Plaintiff worked five days a week, Monday through Friday, for 40 hours per week. Plaintiff received $400 per week as a handyman.

38.    In or about early April 2011, Defendants promoted Plaintiff to superintendent of the apartment building located 437 Morris Park Avenue. Plaintiff's primary job responsibilities during the applicable statutory period were to maintain the building and attend to any onsite emergencies that might occur. Specifically, Plaintiff would receive work-orders directly from Defendants that included plumbing work, electrical work, fixing furniture, repairing hot water heaters and boilers, repairing water damage, fixing air conditioning, responding to tenant complaints and other general repairs and maintenance to apartments and public areas within the building.

39.    Plaintiff continued working his regular handyman hours when first promoted. Soon thereafter, in or about the mid-April 2011, he became responsible for handling calls on nights and weekends. Plaintiff's pay rate did not change with this expansion of hours and responsibilities.

40.    Given the frequency of night and weekend calls, Defendants required Plaintiff to move into the 437 Morris Park Avenue building. In or about the middle of April 2011, Plaintiff and his family, including his 17 year old son Manuel Almonte ("Manuel"), moved into an illegal

basement apartment at 437 Morris Park Avenue. At this time, Plaintiff was working substantially greater than 40 hours per week.

41.     In or about mid-April 2011, Mr. Muñoz complained to Defendants that he feared trouble with the Internal Revenue Service, given that his income "on paper" far exceeded that which he was actually making because of Defendants' payroll scheme.

42.     At or about the same time, an accident occurred at the 437 Morris Park Avenue location where another of Defendants' employees, Pablo, sustained an injury while on the job. Pablo sought to receive Workers Compensation Insurance for the injury but soon learned Defendants failed to maintain a Workers Compensation Insurance Policy.

43.     Fearing an investigation, Defendants demanded Plaintiff's social security number or tax identification number despite already knowing Plaintiff did not have these documents. Plaintiff reiterated this to Defendants. Defendants then told Plaintiff that in order for Plaintiff to keep his job, Defendants would hire Plaintiff's son Manuel, knowing Manuel had proper documentation and a social security number. Defendants arranged to hire Manuel, have Plaintiff continue working, and put Plaintiff's pay in his son Manuel's name to avoid any legal problems. Fearing loss of his job, Plaintiff agreed to this modification. As part of this "deal," Manuel would be hired as a superintendent and perform superintendent duties alongside Plaintiff.[1]

44.     With both Plaintiff and Manuel working for Defendants, they received the same total amount of pay that Plaintiff received when he was individually promoted to superintendent, i.e. $400 per week with the rent-free illegal basement apartment.

---

[1] See Exhibit A for time sheets signed by Manuel as Superintendent.

45.    This amounted to having both Plaintiff and his son working for Defendants while earning only Plaintiff's original salary.

46.    In or about December 2012, Defendants increased Plaintiff's responsibilities to performing work at other locations three times a week; this required Plaintiff to travel to other buildings, including the building located at 1195 Sherman Avenue. Plaintiff continued to work substantially greater than 40 hours per week performing these extra responsibilities.

47.    In or about December 2012, the compensation Manuel was receiving on behalf of Plaintiff and himself rose to $500 per week salary with the rent-free illegal basement apartment. This was the total compensation Defendants paid to Plaintiff and Manuel.

48.    In or about January 2013, Defendants continued to expand Plaintiff's duties by having him perform his superintendent duties at other locations, i.e. 1056 Boynton Avenue and 1101 Manor Avenue, in addition to the duties he was already performing at 437 Morris Park Avenue and 1195 Sherman Avenue. Manuel also performed these expanded duties when directed by Defendants. The compensation paid to Manuel, who was still receiving payments in the aforementioned manner for him and Plaintiff, did not increase as a result of this expansion in duties to Plaintiff and Manuel.

49.    From January to March 2013, Plaintiff took two loans, one of approximately $2,000 and the other of approximately $3,000, from Defendants to assist in paying for his naturalization as a citizen of the United States.

50.     Defendants automatically deducted loan payments from the compensation that was in Manuel's name. The deductions are identified on Manuel's pay stubs as "loan." Neither Plaintiff nor Manuel consented in writing to Defendants' automatic deductions.[2]

51.     Defendants did not provide Plaintiff with a statement of wages listing his gross wages, deductions and net wages with each payment Plaintiff was supposed to receive as a result of the work he completed.

52.     Plaintiff continued to work substantially greater than 40 hours per week, handling daytime work orders, night and weekend calls and emergency calls, while he and Manuel worked for $500 per week while living in the 437 Morris Park Avenue location. Plaintiff and Manuel continued to receive work-orders directly from Defendants that included plumbing work, electrical work, fixing furniture, repairing hot water heaters and boilers, repairing water damage, fixing air conditioning, responding to tenant complaints and other general repairs and maintenance to apartments and public areas within the building.

53.     On or about April 28, 2013, Plaintiff was "officially" hired as a superintendent for Defendants because he received his social security number and working permit. Simultaneously, Plaintiff's son Manuel was immediately demoted to a full-time handyman and paid minimum wage. Soon thereafter, Manuel's hours were cut to part-time.

54.     The aforementioned loan deductions continued on Plaintiff's pay stubs when Plaintiff was officially hired on or about April 28, 2013.[3]

55.     In or about May 2013, Plaintiff was still working substantially greater than 40 hours per week. As such, Plaintiff asked Defendants for a raise to $1,000 per week. After some

---

[2] See Exhibit B hereto for pay stubs evidencing loan deductions.
[3] See Exhibit C.

11

negotiation, Plaintiff accepted a raise to $895 that was to be paid in two separate checks: a portion of his pay would come from Defendant Sherman Ave and another portion would come from a second check from Defendant Morris Park.

56.     In or about December 2013, Plaintiff requested another raise.   Plaintiff complained to Defendants that his duties were overbearing and that he was performing superintendent and handyman duties at most of the buildings without being paid enough. Plaintiff was immediately terminated by Defendants.

57.     Upon information and belief, at all relevant times herein, Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

58.     At all relevant times herein, Defendants failed to provide Plaintiff with notice of his pay rate, regular day pay, the unit of measure for Plaintiff's pay, deductions, allowances and net wages.

59.     At all relevant times herein, Defendants have deprived Plaintiff of compensation for minimum wage, overtime, and spread of hours as described herein.

60.     Defendants are and have been aware of the requirement to pay Plaintiff for overtime work and at least the required minimum wage for hours worked, yet purposefully chose not to do so.

61.     Defendants' wrongful acts and omissions, as alleged, herein, were not made in good faith or in conformity with, or in reliance on, any written administrative regulation, order, ruling, approval or interpretation by the U.S. Department of Labor and/or the New York State Department of Labor, or any administrative practice or enforcement policy of such departments.

62.    Defendants' violations of the above described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and in bad faith.

63.    At all relevant times herein, Defendants controlled Plaintiff's work schedule and conditions of employment; determined the rate and method of the payment of wages; and kept at least some records regarding Plaintiff's employment.

64.    Defendants required Plaintiff to work around the clock. Thus, he was specifically scheduled to work more than forty (40) hours per work week and, in fact, had to work seven days a week to handle emergencies and fix problems reported by tenants of the various apartment buildings he attended to.

65.    During the applicable statutory period, Plaintiff was not exempt from the minimum wage and overtime laws proscribed by the FLSA and NYLL.

66.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages as alleged herein.

## CAUSES OF ACTION
### Count I
### Violation of Fair Labor Standards Act (Overtime)

67.    Plaintiff repeats and realleges the allegations contained in paragraphs above, as if fully set forth herein.

68.    The conduct alleged herein violates the FLSA as Defendants failed to compensate Plaintiff for overtime hours worked.

69.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

70.    Plaintiff requests for relief are set forth below.

## Count II
### Violation of Fair Labor Standards Act (Minimum Wage)

71.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

72.    The conduct alleged herein violates the FLSA as Defendants failed to compensate Plaintiff in accordance with the Federal statutorily required minimum rate of pay per hour worked.

73.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

74.    Plaintiff's requests for relief are set forth below.

## Count III
### Violation of Fair Labor Standards Act (Recordkeeping)

75.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

76.    The conduct alleged herein violates the FLSA as Defendants failed to maintain time records for non-exempt employees.

77.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

78.    Plaintiff's requests for relief as set for below.

## Count IV

### <u>Violation New York State Labor Law (Overtime)</u>

79.     Plaintiff repeats and realleges the allegations contained in paragraphs above, as if fully set forth herein.

80.     The conduct alleged herein violates the NYLL and NYCRR as Defendants failed to compensate Plaintiff for overtime hours worked.

81.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

82.     Plaintiff requests for relief are set forth below.

## Count V

### <u>Violation of New York State Labor Law (Minimum Wage)</u>

83.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

84.     The conduct alleged herein violates the New York State Labor Law as Defendants failed to compensate Plaintiff the State statutorily required minimum rate of pay per hour worked.

85.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

86.     Plaintiff's requests for relief as set forth below.

## Count VI

### Violation of the New York State Labor Law (Deductions from Wages)

87.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

88.     The conduct alleged herein violates the New York State Labor Law as Defendants deducted loan payments from Plaintiff's pay without Plaintiff expressly authorizing the deductions in writing.

89.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

90.     Plaintiff's requests for relief as set forth below.

## Count VII

### Violation of New York State Labor Law (Wage Theft Prevention Act)

91.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

92.     The conduct alleged herein violates the New York State Labor Law as Defendants failed provide Plaintiff with notice of Plaintiff's employment, of his pay rate, regular day pay, the unit of measure for Plaintiff's pay, deductions, allowances and net wages.

93.     Defendants' conduct was willful and lasted for the duration of the relevant time periods.

94.     Plaintiff's requests for relief as set forth below.

## Count VIII

### Violation of 12 NYCRR § 142-2.4 (Spread of Hours)

95.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

96.    Defendants required Plaintiff to work in excess of ten (10) hours per day on a regular basis without receiving "spread of hours" compensation.

97.    Plaintiff was not paid the statutorily required "spread of hours" pay which would have required an additional hour of pay for each day Plaintiff worked.

98.    Defendants' conduct was willful and lasted for the duration of the relevant time periods.

99.    Defendants' conduct was in violation of 12 NYCRR § 142-2.4.

### JURY DEMAND

100.  Plaintiff demands a trial by jury for all claims stated herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants as follows:

a) Demand a jury trial on these issues to determine liability and damages;

b) Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c) A judgment declaring that the practices complained of herein are unlawful and in violation of Fair Labor Standards Act, ("FLSA"); the New York Labor Law ("NYLL"); New York "spread of hours" pay required under ("N.Y.C.R.R.");

d) An award to the Plaintiff for the amount of unpaid wages, including interest thereon, and penalties subject to proof;

e) An award of liquidated damages pursuant to the FLSA, NYLL and any other applicable statute, rule, or regulation, including the rules or regulations of the New York Commissioner of Labor.

f) All damages which Plaintiff sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

g) An award to Plaintiff of compensatory damages, including but not limited to damages for emotional pain and suffering;

h) An award to Plaintiff of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

i) An award of punitive damages;

j) Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

k) Pre-judgment and post-judgment interest, as provided by law; and

l) Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated:     Garden City, New York
           September 23, 2014

                              Respectfully submitted,

                              **VALLI KANE & VAGNINI LLP**
                              *Attorneys for Plaintiff*
                              600 Old Country Road, Suite 519
                              Garden City, New York 11530
                              (516) 203-7180

                              By:_____
                                   Robert P. Valletti (RV-1847)