UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
NESTOR ALMONTE,

                       Plaintiff,

   -against-                           NO. 14-CV-5951(KPF)

437 MORRIS PARK, LLC d/b/a F&T
MANAGEMENT COP., 1195 SHERMAN AVE.,
LLC, SHERMAN MANAGEMENT CO., d/b/a
SHERMAN MANAGEMENT ASSOCIATES, LLC,
CHANINA KLAHR, KALMAN TABAK, and
ABRAHAM FINKELSTEIN,

                       Defendants.
------------------------------------------------------------------ X

**STATEMENT OF 437 MORRIS PARK, LLC, 1195 SHERMAN AVE., LLC, CHANINA KLAHR, KALMAN TABAK, and ABRAHAM FINKELSTEIN PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Defendants 437 Morris Park, LLC, 1195 Sherman Ave., LLC, Chanina Klahr, Kalman Tabak and Abraham Finkelstein ("Defendants") respectfully submit this Statement pursuant to Local Civil Rule 56.1 in support of their motion for partial summary judgment to set forth the material facts as to which there is no genuine issue or dispute.

**I.    FACTS PERTINENT TO THE STANDARD OF REVIEW
       AND PROCEDURAL HISTORY**

   1.   This action was commenced on July 31, 2014 by the filing of a Summons and Complaint. (Declaration of Stuart A. Weinberger dated August 7, 2015 at Exhibit (Ex.) A.)[1]

   2.   Plaintiff filed a First Amended Complaint on September 24, 2014. (Ex. B.)

---

[1] This exhibit and all subsequently referenced exhibits are attached to the accompanying declaration of Stuart A. Weinberger dated August 7, 2015. In all future citations, and citation to an exhibit necessarily refers to the exhibit annexed to the declaration of Mr. Weinberger.

Case 1:14-cv-05951-KPF   Document 71-1   Filed 08/07/15   Page 2 of 6

3. In the First Amended Complaint, Plaintiff brings claims against Defendants under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) as follows:

   a. Count I:     Failure to pay overtime under the FLSA (Ex. B at ¶¶ 67-70);

   b. Count II:    Failure to pay minimum wage under the FLSA (Ex. B at ¶¶ 71-74);

   c. Count III:   Violation of the FLSA recordkeeping requirements (Ex. B at ¶¶ 75-78);

   d. Count IV:    Failure to pay overtime under the NYLL (Ex. B at ¶¶ 79-82);

   e. Count V:     Failure to pay minimum wage under the NYLL (Ex. B at ¶¶ 83-86);

   f. Count VI:    Unlawful deductions from wages under the NYLL (Ex. B at ¶¶ 87-90);

   g. Count VII:   Violation of the New York Wage Theft Prevention Act (Ex. B at ¶¶ 91-94); and,

   h. Count VIII:  Failure to pay "spread of hours" wages under the NYLL (Ex. B at ¶¶ 95-99).

4. Defendants filed their Answer to the First Amended Complaint on October 27, 2014. (Ex. C.)

5. As a first affirmative defense, Defendants alleged that "Plaintiff has failed to state a claim against the Defendants upon which relief can be granted." (Ex. C at ¶ 49.)

6. As a second affirmative defense, Defendants alleged that "Plaintiff claims causes of action and/or relief which are not provided for and/or which he is not entitled to receive under applicable law.(Ex. C at ¶ 50.)

7. The undisputed facts set forth below establish that Defendants are entitled to summary judgment on Counts IV, V, and VII of the First Amended Complaint because Plaintiff was

2

employed in the building services industry as a janitor, and as such was subject to the Minimum Wage Order for the Building Services Industry promulgated by the New York State Commissioner of Labor effective July 24, 2009. (Ex. D.)

## II. FACTS PERTINENT TO COUNTS IV, V, AND VIII OF THE FIRST AMENDED COMPLAINT

8. 437 Morris Park Avenue is an apartment building. (Ex. G at 67.)

9. 437 Morris Park Avenue, is partly operated as a homeless shelter with apartments rented to a social services agency named Aguila. (Ex. F at 12-13.)

10. Aguila is a not-for-profit agency that contracts with the City of New York to provide apartments to homeless individuals; thus, Aguila rents the apartments at 437 Morris Park Avenue from Defendants and then utilizes those apartments to fulfill its contract with the city to provide housing to homeless individuals. (Ex. H at 17-18, 21-23.)

11. 437 Morris Park Avenue also has regular tenants who are not homeless. (Ex. H at 41.)

12. Defendant Chanina Klahr was the site manager for several buildings operated by Defendants Finkelstein and Tabak, including 1056 Boynton Avenue, 437 Morris Park Avenue, and 1195 Sherman Avenue. (Ex. F at 9-10.)

13. Klahr's duties and responsibilities as site manager included overseeing the staff employed in each building, which included the superintendents, porters, and handymen employed in the buildings. (Ex. F at 10-11.) As part of Klahr's duties, Klahr would be required to provide written work orders to the building superintendents. (Ex. F at 12.)

14. Plaintiff testified that he worked for 437 Morris Park Avenue from March 2011 until December 2, 2013. (Ex. E at 8.)

15. Prior to working at 437 Morris Park Avenue, Plaintiff worked at 1056 Boynton Avenue for approximately one month, from February 2011 until March 2011. (Ex. E at 18, 82; Ex. F at 18-19.)[2]

16. Plaintiff testified: "From the beginning, the company was looking for a [superintendent]. . . . [Plaintiff] worked at 1056 Boynton taking instructions as a trial, then [Plaintiff] was transferred to 437 Morris Park to start to get to know the building with the purpose that [Plaintiff] would eventually become the [superintendent] of that building." (Ex. E at 32.)

17. When Plaintiff moved to 437 Morris Park Avenue, it was with the intention that he become the superintendent of the building. (Ex. E at 20; Ex. F at 19.)

18. At the time, the superintendent of 437 Morris Park Avenue was Ernesto Torres. (Ex. E at 31; *see* Ex. E at 33 clarifying the name of said person as Ernesto Torres.)

19. Plaintiff and Torres worked together for approximately three weeks, and upon Mr. Torres's departure, Plaintiff became the superintendent. (Ex. E at 31.)

20. Plaintiff was asked the following at his deposition: "So you became the [superintendent] after Ernesto [Torres] left; is that correct?", to which Plaintiff answered, "Yes." (Ex. E at 31.)

21. Plaintiff was asked the following at his deposition: "You were doing the superintendent's job at 437 Morris Park in 2011; is that correct?", to which Plaintiff responded, "Yes." (Ex. E at 49.)

22. Upon replacing Mr. Torres as the superintendent, Plaintiff testified that his duties included those of "every superintendent," which is to do maintenance for the building, following

---

[2] For purposes of this motion only, in accordance with the well-established principles applicable to motions under Rule 56 of the Federal Rules of Civil Procedure, Defendants do not dispute this fact because Plaintiff does not claim he is owed any money for the time that he worked as a handyman at 1056 Boynton Avenue. (Ex. E at 19.) *But see* Ex. F at 119-30 & 137-38 as to reasons why this fact is in dispute should it become a material fact in later proceedings.

4

work orders, taking calls, and receiving any complaints by phone call. (Ex. E at 33-34; *see also* Ex. F at 28-30 (describing duties of superintendent).)

23. Plaintiff also was responsible for maintaining the record of employee hours, submitting employee timesheets to payroll each week for processing, managing other workers, supervising outside companies performing work as independent contractors, and accepting deliveries on behalf of the building. (Ex. F at 29-30; Ex. E at 113-14.)

24. As the supervisor of the other employees, Plaintiff, as the superintendent, would receive the work orders and then assign those work orders to other employees, such as handymen or the superintendents of other buildings. (Ex. E at 42; Ex. F at 30-32, 35-36.) Plaintiff would assign the work to everyone in the building, with the exception of a porter who already had a set routine. (Ex. E at 90-91; *see also* Ex. F at 32-33.)

25. Beginning in 2011, Plaintiff identified himself as the superintendent of 437 Morris Park Avenue to anyone who did business with the building. (Ex. E at 50.)

26. Beginning in approximately the end of April or beginning of May 2011 (Ex. E at 51), Plaintiff received an apartment as superintendent (Ex. E at 50-51, 92; Ex. F at 21, 24). Plaintiff moved into the superintendent's apartment with his family. (Ex. F at 24.)

27. Plaintiff's supervisor on the job was Defendant Chanina Klahr, the manager of 437 Morris Park Ave. (Ex. E at 51; Ex F. at 26.)

28. Mr. Klahr was the person who assigned the work orders to Plaintiff. (Ex. E at 52.)

29. After becoming the superintendent in April 2011, Plaintiff was never demoted back to being a handyman. (Ex. E at 54.)

30. Plaintiff testified that he remained as the superintendent from April 2011 until he stopped working in December 2013. (Ex. E at 54.)

31. Plaintiff signed off and approved the timesheets that the handymen filled out. (Ex. E at 67.) Plaintiff also testified that he was tasked with approving the timesheets because he was the superintendent who had witnessed that the worker had completed the time. (Ex. E at 67-68.)

32. Plaintiff received a telephone to respond to emergencies on behalf of the company. (Ex. E at 96; Ex. F at 70-71.)

33. Plaintiff does not claim any monies are owed to him for any period after April 23, 2013. (Ex. E at 157, 181.)

Dated: August 7, 2015                                              Respectfully submitted,

/s/ Stuart Weinberger
Stuart A. Weinberger
Goldberg and Weinberger LLP
630 Third Avenue, 18th Floor
New York, NY 10017
(212) 867-9595 ext. 313