UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X

NESTOR ALMONTE,

                                 Plaintiff,

                 v.

437 MORRIS PARK, LLC, *et al.*,

                            Defendants.

-------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:

14 Civ. 5951 (KPF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 24, 2015

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Nestor Almonte ("Plaintiff") initiated this action in July 2014, alleging that Defendants 437 Morris Park, LLC, 1195 Sherman Ave, LLC, Sherman Management Co., Kalman Tabak, Abraham Finkelstein, and Chanina Klahr (collectively, "Defendants"), had violated his rights under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL").  In August 2015, Defendants moved for summary judgment on three of Plaintiff's state-law claims — namely, the claims that: (i) Defendants violated New York's "spread of hours" requirement, (ii) Defendants violated New York's minimum wage laws, and (iii) Defendants violated New York's overtime requirements.  For the reasons set forth in the remainder of this Opinion, the Court grants Defendants' motion as to Plaintiff's spread-of-hours claim, but denies the motion as to his minimum wage and overtime claims.

# BACKGROUND[1]

## A.    Factual Background

Defendants are a collection of individuals and limited liability corporations operating residential apartment buildings in the Bronx.  These buildings include 1056 Boynton Avenue, 437 Morris Park Avenue, and 1195 Sherman Avenue.  (Weinberger Decl., Ex. F at 10-11).[2]  In February 2011, Plaintiff began working as a handyman at 1056 Boynton Avenue.  (*Id.*, Ex. E at 19).  Approximately one month later, Plaintiff transitioned to a job at 437 Morris Park Avenue.  (*Id.* at 19, 21).  Soon after he began his work at the Morris Park Avenue property, Plaintiff and his family moved into the building. (*Id.* at 52).

Plaintiff testified that he was "moved to 437 Morris Park to become the super[intendent], but [he] still didn't have [his] papers for authorization to work

---

[1]    The facts stated herein are drawn from the parties' submissions in connection with the instant motion, including Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #71-1)), and Plaintiff's responses thereto ("Pl. 56.1" (Dkt. #74-5)), as well as the Declarations of Stuart A. Weinberger ("Weinberger Decl.") (Dkt. #70) and Robert P. Valletti ("Valletti Decl.") (Dkt. #74), and the exhibits thereto.  For convenience, Defendants' opening brief is referred to as "Def. Br." (Dkt. #71); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #73); and Defendants' reply brief as "Def. Reply" (Dkt. #77).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[2]    All of the Court's record citations refer to page numbers assigned by the Electronic Case Filing System, rather than page numbers that appear on original documents or deposition transcripts.

in the United States." (Weinberger Decl., Ex. E at 21).  As a result, Plaintiff said, Defendants hired his son, Manuel Almonte, to be the superintendent. (*Id.*).  Plaintiff and Manuel testified that they worked together to perform the superintendent's duties.  (*See, e.g.*, Weinberger Decl., Ex. E at 35-36; *see id.* at 47-48; Valletti Decl., Ex. 1 at 14).  Plaintiff testified that he would generally work as Manuel's "shadow": Manuel would "go do the jobs, but [Plaintiff] would be present there with him" (Weinberger Decl., Ex. E at 48), or Plaintiff would "be doing [various] repairs, showing [Manuel] how to do those repairs so that the following time, he could do them" (*id.* at 36).  Plaintiff and his son both testified that Defendant Chanina Klahr agreed to this shadowing arrangement. (*Id.* at 48; Valletti Decl., Ex. 1 at 14).

Plaintiff and his son also testified that they received a single check — in Manuel Almonte's name — for the work they jointly performed at 437 Morris Park Avenue.  (*See, e.g.*, Weinberger Decl., Ex. E at 64 (Nestor Almonte testimony: "The pay would be given to my son, and we would divide the check."); *id.* at 191 ("[T]here was two people working and only one would receive the check."); Valletti Decl., Ex. 1 at 43 (Manuel Almonte testimony: "We were both the super, but we were only getting one check under [Manuel's] name.")).  Separately, Plaintiff and Manuel testified that they performed some work for Defendants at a different building, 1195 Sherman Avenue.  (*See, e.g.*, Weinberger Decl., Ex. E at 85, 230; Valletti Decl., Ex. 1 at 42).

**B.      Procedural Background**

On July 31, 2014, Plaintiff filed this action against Defendants.  (Dkt. #1 at 1).  The First Amended Complaint alleges that Defendants: (i) failed to pay Plaintiff overtime wages required by the FLSA; (ii) failed to pay Plaintiff the minimum wage required by the FLSA; (iii) violated the FLSA's recordkeeping requirements; (iv) failed to pay Plaintiff overtime wages required by the NYLL; (v) failed to pay Plaintiff the minimum wage required by the NYLL; (vi) took deductions from Plaintiff's wages that were illegal under the NYLL; (vii) violated the New York Wage Theft Prevention Act; and (viii) failed to pay Plaintiff the spread-of-hours compensation required by the NYLL.  (*See generally* First Amended Complaint ("FAC") (Dkt. #9)).

On August 7, 2015, Defendants filed this motion for partial summary judgment, arguing that Plaintiff could not maintain his spread-of-hours claim, his claim that Defendants violated the minimum wage provisions of the NYLL, or his claim that Defendants failed to meet the overtime requirements of the NYLL. (*See* Dkt. #69-72).  Plaintiff filed his opposition papers on September 10, 2015.  (Dkt. #73-74).  Defendants then filed their reply papers on October 1, 2015.  (Dkt. #77-78).

## DISCUSSION

**A.      Applicable Law**

Under Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if the record "'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322 (1986); *accord Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *see also Jeffreys* v. *City of New York,* 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). When a court decides whether a reasonable jury could return a verdict for the nonmoving party, it must "view the evidence in the light most favorable to the party opposing summary judgment." *Rodriguez* v. *City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995); *see also United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 (1962).

A defendant "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The defendant may carry this burden by showing that the plaintiff has not produced sufficient evidence "to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.,* 711 F.3d 253, 256 (2d Cir. 2013).

If the defendant carries its initial burden, the plaintiff cannot respond by reciting "allegations or denials" contained in the pleadings. *Anderson,* 477 U.S.

at 248; *see also Celotex,* 477 U.S. at 323-24; *Wright* v. *Goord,* 554 F.3d 255, 266 (2d Cir. 2009).  Nor can the plaintiff rely on "speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir. 1986).  Instead, the plaintiff must point to evidence in the record that creates a "genuine issue for trial." *Anderson,* 477 U.S. at 248.

**B.    Analysis**

**1.    Defendants Are Entitled to Summary Judgment on Plaintiff's Spread-of-Hours Claim**

The New York Commissioner of Labor (the "Commissioner") has promulgated several minimum wage orders to protect New York workers in a variety of different industries.  *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 141 (minimum wage order for building service industry); § 146 (minimum wage order for hospitality industry).  Most New York workers are covered by the minimum wage order for "Miscellaneous Industries and Occupations" (the "Miscellaneous Industries Order"), which provides that employees must be paid a premium "in addition to the minimum wage" for every day that their "spread of hours exceeds 10 hours."  *Id.* § 142-2.4(a).  In other words, employees must be paid a premium for every day that "the interval between the beginning and end of [the] workday" exceeds ten hours.  *Id.* § 142-2.18.  The First Amended Complaint alleges that Defendants violated the Miscellaneous Industries Order by "requir[ing] Plaintiff to work in excess of ten (10) hours per day on a regular basis" without paying him "'spread of hours' compensation."  (FAC 17).

6

As Defendants observe, the Miscellaneous Industries Order "does not apply to 'employees covered by . . . any other minimum wage order'" (Def. Br. 6 (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 142-1.1(a))), and the Commissioner has promulgated a minimum wage order specific to the building service industry (the "Building Service Order") (*id.* at 6-7 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 141)).  The Building Service Order protects the employees of "any person, corporation or establishment engaged in whole or in part in renting, servicing, cleaning, maintaining, selling, or managing buildings or building space."  N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.1.[3]

In this case, undisputed evidence shows that Defendants were in the business of renting, maintaining, and managing building space.  (*See* Weinberger Decl., Ex. H at 42 (deposition testimony of Abraham Finkelstein that 437 Morris Park Avenue, LLC had some "regular tenants"); *id.* at 142 (Finkelstein testimony that 1195 Sherman Avenue owned or operated apartment buildings); *id.*, Ex. F at 59 (deposition testimony of Chanina Klahr that 1195 Sherman was also known as Sherman Management Company); *id.*, Ex. H at 11 (Finkelstein testimony that he and Kalman Tabak were "owner[s]" or "partner[s]" of 437 Morris Park Avenue, LLC, and 1195 Sherman Avenue, LLC); *id.*, Ex. F at 10 (Klahr testimony that he was a site manager at several residential apartment buildings)).  The evidence also shows that Plaintiff was

---

[3]     There are a few exceptions to this general rule, but the parties have not argued that any of them is relevant here.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 141-3.1(b) (listing exclusions from the building service industry), 141-3.2(b) (listing exclusions from covered employees).

employed to help Defendants with this business.  (*See generally* Weinberger Decl., Ex. E (deposition testimony of Nestor Almonte)).  Thus, Plaintiff was covered by the Building Service Order, which does not require employers to pay any spread-of-hours premium to employees.  *See generally* N.Y. Comp. Codes R. & Regs. tit. 12, § 141.  As a result, Plaintiff cannot maintain a spread-of-hours claim in this litigation.

Plaintiff fights this conclusion, arguing that his case is analogous to *Almeida* v. *Aguinaga*, 500 F. Supp. 2d 366 (S.D.N.Y. 2007).  In *Almeida*, a couple hired the plaintiff to work as a "domestic service employee" in their home.  *Almeida*, 500 F. Supp. 2d at 366.  The plaintiff later sued the couple, claiming that they owed her overtime compensation and a spread-of-hours premium.  *Id.* at 368-69.  The couple moved for summary judgment, but the district court held that there was enough evidence for Plaintiff to pursue a "spread-of-hours claim for the May 24, 2000 to June 2001 time period."  *Id.* at 370.

According to Plaintiff, *Almeida* stands for the proposition that building service workers are "entitled to spread of hours pay." (Pl. Opp. 11).  Setting the non-precedential nature of the decision aside for a moment, the Court disagrees with Plaintiff's interpretation of *Almeida*.  The Building Service Order does not cover employees like the *Almeida* plaintiff, who provided domestic services for a single family.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.2(b)(1) (noting that the Building Service Order does not apply to "an employee of an owner or lessee of a building occupying the entire building for his own

use if such employee works exclusively in that building"). As a result, the *Almeida* plaintiff could claim the protections of the Miscellaneous Industries Order, including the spread-of-hours provision codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).

By contrast, the Building Service Order clearly applies to employees like Plaintiff, who maintain and repair multi-unit apartment buildings occupied by multiple families. *See, e.g.*, *Koljenovic* v. *Marx*, 999 F. Supp. 2d 396, 397-402 (E.D.N.Y. 2014) (applying the Building Service Order to superintendents working in multi-unit apartment buildings); *Lee* v. *Kim*, No. 12 Civ. 316 (RER), 2013 WL 4522581, at *1, *5 (E.D.N.Y. Aug. 27, 2013) (same). As a result, Defendants are entitled to summary judgment on Plaintiff's spread-of-hours claim.

### 2. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Minimum Wage and Overtime Claims Under the NYLL

The Building Service Order sets out a minimum hourly wage "for all [building service] employees *except janitors in residential buildings*." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.3 (emphasis added). The Order also provides that "[a]n employer shall pay [a building service] employee, *except a janitor in a residential building*, for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek." *Id.* § 141-1.4 (emphasis added). Janitors are not entitled to minimum hourly wages or overtime because they are compensated based on the "number of units" in the building where they work. *Id.* § 141-1.2; *see also Koljenovic*, 999

9

F. Supp. 2d at 399; *Niemiec* v. *Ann Bendick Realty*, No. 04 Civ. 897 (ENV), 2007

WL 5157027, at *4 n.6 (E.D.N.Y. Apr. 23, 2007).

Of particular significance to the instant motion, the Building Service

Order defines a "janitor" as:

> a person employed to render any physical service in
> connection with the maintenance, care or operation of
> a residential building. Where there is only one
> employee, such employee shall be deemed the janitor.
> Where there is more than one employee in the building,
> *the employer shall designate an employee who lives in
> the building as the janitor*. No building may have more
> than one janitor.

N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4 (emphasis added).  In this case,

Defendants argue, undisputed evidence shows that Plaintiff was the

"designated" janitor of 437 Morris Park Avenue.  (Def. Br. 8).  Defendants

explain that Plaintiff was hired "to be the building superintendent," and

"Plaintiff . . . admits that he was the person responsible for the building.  He

assigned work to all of the other employees after receiving the work orders from

his supervisor, Mr. Klahr.  Plaintiff also received a telephone from the company

in order to respond to emergencies."  (*Id.*).  Defendants also note that Plaintiff

was given "an apartment as an incident of his employment. Plaintiff was the

one who was required and designated by 437 Morris Park to live in the

building.  Clearly, by giving Plaintiff the apartment, 437 Morris Park designated

him as the 'employee who lives in the building as the janitor.'" (*Id.* (quoting N.Y.

Comp. Codes R. & Regs. tit. 12, § 141-3.4)).  Because Plaintiff was the janitor of

437 Morris Park Avenue, Defendants claim, he was not entitled to a minimum

hourly wage or overtime compensation; as a result, Defendants conclude, they

are entitled to summary judgment on Plaintiff's NYLL wage and hour claims.
(*Id.* at 8-9).  The Court is not persuaded by this line of reasoning.

### a.   A Reasonable Jury Could Find That Plaintiff Had Not Been Designated as a Janitor

As Defendants acknowledge (*see* Def. Br. 3), multiple employees provided
"physical service[s] in connection with the maintenance, care or operation" of
437 Morris Park Avenue.  N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4.
Thus, Plaintiff could only be considered the janitor if Defendants "designate[d]"
him as such.  (*Id.*).

Unfortunately, there is scant case law explaining what it means to
"designate" an employee as a janitor.  The parties have directed the Court's
attention to *Koljenovic*, where two superintendents sued their employers for
failing to meet the overtime requirements of the New York Labor Law.  999
F. Supp. 2d at 397.  The plaintiff-superintendents claimed that they could not
be considered "janitor[s]" because they had never been specifically designated
as janitors, either orally or in writing, as required by New York law.  *Id.* at 400.
Absent such a contemporaneous designation, the plaintiffs argued, "employers
would be able to evade the overtime regulations by 'making self-serving, after-
the-fact designations in response to subsequent claims for overtime
compensation.'"  *Id.*  The court rejected the plaintiffs' argument, explaining:

> [The] plaintiffs were the only employees eligible to be
> designated as the exempt "janitor" under section 141-
> 1.4 for each of their respective buildings. The plain
> language of section 141-3.4 provides that, "[w]here
> there is more than one employee" in a residential
> building, "the janitor" for purposes of New York's

11

> overtime regulations must be an "employee who lives in the building." *See* 12 N.Y.C.R.R. § 141-3.4. [The] [p]laintiffs concede that more [than] one employee provided services at each of their respective buildings . . . , and that they were the only employees who lived in the buildings . . . . [The] [p]laintiffs also concede that they were designated as "building superintendents," which in the common parlance of New York City refers to a resident janitor. *See, e.g., Leich* v. *Borchard Affiliations,* 256 A.D. 1019, 1019, 10 N.Y.S.2d 496 (3d Dep't 1939); *Schmidt* v. *Emigrant Indus. Sav. Bank,* 148 F.2d 294, 295-96 (2d Cir. 1945); *see also Harper* v. *Government Employees Ins. Co.,* 980 F. Supp. 2d 378, 385, 2013 WL 5926980, at *6 (E.D.N.Y. Nov. 13, 2013) ("An employee['s] exempt status depends less on his title, and more on the actual duties performed."). Finally, [the] plaintiffs concede that they were compensated consistent with the regulations for resident janitors, as they were provided with a flat salary, a rent-free apartment, and free utilities. *See* 12 N.Y.C.R.R. §§ 141-1.5-1.6 (allowances for apartment and utilities).

*Id.* at 400-01 (footnote omitted). Under these circumstances, the court concluded, there was "no risk of the employer compensating several employees at the reduced 'janitor' rate and then using after-the-fact designations to ward off subsequent wage and overtime claims." *Id.* at 401; *see also Lee*, 2013 WL 4522581, at *5 (holding that superintendents were indisputably "janitor[s]" because they were the only employees living in their buildings).

Thus, *Koljenovic* suggests that the purpose of having an employer "designate" one employee as a janitor is to force the employer to make a clear, pre-litigation choice about how to compensate its workers. The employer can hire *one* live-in janitor who receives a reduced cash wage, but the employer cannot underpay all of its workers and then claim that the first employee to bring a lawsuit is the "janitor." With this purpose in mind, the Court will

employ a multi-factor test to determine whether a reasonable jury would *necessarily* find that Plaintiff was the "designate[d]" janitor of 437 Morris Park Avenue.  These factors include: (i) whether Plaintiff was the only employee who lived in the building; (ii) the manner in which Plaintiff and other employees were compensated; (iii) whether Plaintiff was listed as a "janitor" or "superintendent" in the employer's official business records; (iv) whether Plaintiff received written notice that he would be compensated as a building janitor; and (v) whether Plaintiff or his employer represented to third parties that Plaintiff was the "janitor" or "superintendent."

> ### b.     A Reasonable Jury Could Find That Plaintiff Was Not the Only Employee Who Lived at 437 Morris Park Avenue

The first factor the Court considers is whether Plaintiff was the only employee who lived at 437 Morris Park Avenue.  When a plaintiff is the only employee living in the building where he works, that factor tips heavily in favor of a finding that the plaintiff is the janitor for the building.  *See Koljenovic*, 999 F. Supp. 2d at 401; *Lee*, 2013 WL 4522581, at *5.  However, when two or more employees live in the building, the finder of fact must look for other indicia that one of those employees was chosen to be the janitor.

Here, Plaintiff and his son Manuel both testified that they lived and worked at 437 Morris Park Avenue.  (*See, e.g.*, Weinberger Decl., Ex. E, p. 32, 47, 52 (Nestor Almonte testimony); Valletti Decl., Ex. 1 at 13-14, 84 (Manuel Almonte testimony)).[4]  Nevertheless, Defendants suggest that Plaintiff was the

---

[4]     Plaintiff and Manuel testified that Plaintiff would work as Manuel's "shadow," "showing [Manuel] how to do [various tasks] so that the following time, he could do them."

only employee who was eligible to be the janitor because Plaintiff was "the employee who live[d] in the building as an incident of his employment." (Def. Br. 9). Assuming for the sake of argument that an employee is only eligible to be the janitor if he lives in a particular building "as an incident of his employment,"[5] a reasonable jury could conclude that Plaintiff and his son Manuel were both living at 437 Morris Park Avenue as an incident of their employment.

Plaintiff testified that he was given an apartment at 437 Morris Park Avenue soon after he started working (Weinberger Decl., Ex. E at 52), presumably so that he would be available to answer a 24-hour "hotline," where tenants reported emergencies (*id.* at 96-97). However, Plaintiff also testified that he and his son were required to perform the superintendent job together because he did not yet have the papers he needed to work in the United States. (*See id.* at 27; *see also id.* at 97 (explaining that, even in an emergency, Plaintiff would say, "'Manuel, let's go'")). In light of this testimony, a reasonable jury

---

(Weinberger Decl., Ex. E at 36; *see id.* at 47-48 (Nestor Almonte testimony); Valletti Decl., Ex. 1 at 14 (Manuel Almonte testimony)). Consequently, a reasonable jury could find that Manuel was working as an apprentice. Notably, however, that finding would not render Manuel ineligible to be the janitor. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4 (providing that a janitor can be any person "employed to render any physical service in connection with the maintenance, care or operation of a residential building"). Nor would it suggest that Manuel was entitled to less compensation. The Building Service Order expressly provides: "No learner or apprentice shall be paid less than the minimum rate prescribed in this [Order]." *Id.* § 141-2.12. Thus, even if Manuel were working as an apprentice, Defendants had an obligation to designate Plaintiff or Manuel as the janitor, and pay the other the minimum hourly wage for building service employees.

[5]     The Court finds no support for this position in text of the Building Service Order, which states — without qualification — that any employee who "lives in the building" can be designated as the janitor. N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4.

could conclude that Plaintiff *and* Manuel Almonte lived at 437 Morris Park

Avenue as an incident to their joint employment.

### c.   A Reasonable Jury Could Draw Negative Inferences from the Way Plaintiff and His Son Were Compensated

A second factor that can help a finder of fact determine whether a

plaintiff was "designate[d]" as a janitor is the manner in which the plaintiff and

other employees were compensated.  *See Koljenovic*, 999 F. Supp. 2d at 400

(noting that the plaintiffs were "compensated consistent with the regulations

for resident janitors, as they were provided with a flat salary, a rent-free

apartment, and free utilities"); *Mancero* v. *242 E. 38th St. Tenants Corp.*, 975

N.Y.S.2d 710 (Sup. Ct. 2013), *adhered to on reargument*, (Sup. Ct. Jan. 28,

2014) (finding that plaintiff was a janitor, in part because he "lived in the

building rent-free, [and] the cooperative paid for his utilities").  In cases where

a plaintiff has been compensated with a flat weekly salary and other building

employees have been compensated with an hourly wage, there will be good

reason to believe that the employer has made a pre-litigation choice to treat the

plaintiff as the janitor.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.2

(providing that a janitor may be compensated with a flat weekly salary based

on the number of units in the janitor's building); *id.* § 141-1.3 (providing that

"all employees except janitors" must be paid a "basic minimum hourly [wage]").

In the same vein, when an employer pays a plaintiff a flat weekly wage, but

provides appropriate overtime compensation for its other employees, that will

constitute strong evidence that the plaintiff has been designated as the janitor.

*See id.* § 141-1.4 (providing that any employee "except a janitor in a residential building" must be paid "overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek").

By contrast, if an employer pays multiple employees a flat weekly rate, there is less reason to believe that the employer has made a pre-litigation choice to treat one employee (the janitor) differently from the others. Particularly when an employer pays multiple employees a flat weekly salary that is less than the amount they would earn if they were paid by the hour, the finder of fact may conclude that the employer has been "compensating several employees at the reduced 'janitor' rate and then using after-the-fact designations to ward off subsequent wage and overtime claims." *Koljenovic*, 999 F. Supp. 2d at 401.

In this case, a reasonable jury could find several facts about Plaintiff's compensation that would support a conclusion that there was no designated janitor for 437 Morris Park Avenue. First, a reasonable jury could find that, for at least part of the relevant time period, Plaintiff and his son Manuel were both compensated with a flat weekly salary, regardless of how many hours they worked. (*See, e.g.*, Weinberger Decl., Ex. E at 191 (deposition testimony of Nestor Almonte that "they used to pay a [single] check that was divided among two people."); *id.* at 192 (explaining that the check was $400 per week in 2011); *id.* at 215 (explaining that the size of the check was "always the same")). A reasonable jury could also find that, for at least part of the relevant time period, Plaintiff and Manuel received a salary that was less than the amount

16

they would have earned if one of them were paid by the hour.  Plaintiff and Manuel testified that Manuel worked "more or less" the same hours as his father.  (Valletti Decl., Ex. 1 at 48 (deposition testimony of Manuel Almonte discussing hours worked in 2011); *see also* Weinberger Decl., Ex. E at 62 (Nestor Almonte testimony: "[A]ny hour that [Manuel] is down that he worked, [Plaintiff] was there as his shadow.")).  Plaintiff also testified that he regularly worked at least 40 hours per week.  (*See, e.g.*, Weinberger Decl., Ex. E at 194 ("[T]hese time sheets reflect the regular schedule between 40, 50 hours a week.")).

Assuming that (i) Plaintiff and Manuel worked at least 40 hours per week, (ii) one of them was entitled to an hourly wage (while the other was entitled to a janitor's salary), and (iii) 437 Morris Park Avenue had 72 units (*see* Valletti Decl., Ex. 1 at 39 (testimony of Manuel Almonte that there were "72 units in the building")), a reasonable jury could find that Plaintiff and Manuel were owed a salary of at least $598.35 per week.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.3(b) (during the relevant time period, non-janitors had to receive at least $7.25 per hour); *id.* §§ 141-1.2(b), 141-2.8(b) (during the relevant time period, janitors had to receive at least $4.85 per unit per week or $308.35 per week, whichever was smaller).[6]  However, Plaintiff

---

[6]     In making this calculation, the Court has not considered the value of Plaintiff's apartment, because Defendants have not introduced evidence that they made Plaintiff's rental agreement available to the New York Commissioner of Labor, or that they had received a permit to rent a basement apartment to an employee.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.4 ("No [minimum wage] allowance will be permitted for an apartment furnished by an employer to an employee unless the employer makes available to the Commissioner of Labor, or his representative, the rental records prescribed in this Part."); *id.* § 141-2.1(d) (The employer shall also maintain a certificate

testified that in 2011, he and Manuel were only paid $400 in total each week. (Weinberger Decl., Ex. E at 192).  This evidence suggests that Defendants were compensating Plaintiff *and* Manuel "at the reduced 'janitor' rate," instead of making a clear, pre-litigation choice to treat Plaintiff as the sole janitor for the Morris Park Avenue property.  *Koljenovic*, 999 F. Supp. 2d at 401.

### d.   A Reasonable Jury Could Conclude That Plaintiff Was Not Listed as the "Janitor" or "Superintendent" in Defendants' Official Business Records

A third factor that the trier of fact can consider to determine whether an employer designated a particular employee as a janitor is whether the employee was listed as the "janitor" or "superintendent" in the employer's business records.  The Building Service Order requires every building service employer to "establish, maintain and preserve for not less than six years, payroll records which shall show for each employee: [i] name and address; [ii] apartment number if allowance for apartment is claimed; [iii] social security number; [iv] *occupational classification (resident janitor, nonresident janitor, "all other" workers) and wage rate*; [and] [v] *for janitors in residential buildings: (i) number of units in building*[.]"  N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.1

---

or permit, where required by law, authorizing occupancy by an employee of an apartment in whole or in part below curb level. . . . In the event . . . such certificate or permit [is] not furnished, no apartment allowance shall be permitted."); *see* Weinberger Decl., Ex. F at 22 (Klahr testimony that the superintendent's apartment is in "the basement of 437 Morris Park"); *see also Koljenovic*, 999 F. Supp. 2d at 399 (suggesting that employers bear the burden of establishing minimum wage exemptions under the Building Service Order).  Similarly, the Court has not considered any utilities that may have been supplied for Plaintiff's apartment because Defendants have not introduced evidence regarding the value of those utilities.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.6 (explaining how free utilities can be factored into the minimum wage for building service employees).

(emphases added).  If an employer lists exactly one employee as a janitor in these payroll records, that can serve as evidence that the employee was in fact the janitor for a particular building.  Similarly, if an employer designates exactly one employee as a "janitor" or "superintendent" in other official business records (such as tax documents), that can demonstrate that the employer made a pre-litigation choice to treat one employee as the janitor.  *See Koljenovic*, 999 F. Supp. 2d at 400 (explaining that, "in the common parlance of New York City" the word "superintendent" refers to "a resident janitor" (citations omitted)).

On the other hand, a failure to maintain business records indicating the title and method of compensation for each employee will militate against a finding that an employer designated a particular individual as the janitor.  *But see Koljenovic*, 999 F. Supp. 2d 400 (explaining that, if an employer did not list an individual as a "janitor" or "superintendent" in official business records, that fact is not necessarily fatal to a claim that the individual was designated as the janitor, at least in cases where there the individual was the sole resident employee).

In this case, a reasonable jury could find that Defendants did not list Plaintiff as the "janitor" or "superintendent" in any of their business records. To the contrary, Plaintiff testified that his son "was, on paper, the superintendent of [437 Morris Park Avenue]" (Weinberger Decl., Ex. E at 36) because Plaintiff "didn't have . . . papers for authorization to work in the United States" (*id.* at 21).  In addition, Manuel Almonte testified that, at a meeting with

Defendant Chanina Klahr, he agreed to work as his father's shadow, and he gave Klahr his "I.D. and Social Security." (Valletti Decl., Ex. 1 at 14-15). From this testimony, a reasonable jury could infer that Manuel Almonte — rather than his father — was listed as the "janitor" or "superintendent" on any records that Defendants kept.

> ### e. There Is No Clear Evidence Regarding Any Written Notice Plaintiff May Have Received Regarding His Compensation

The Building Service Order provides that all building service employers "shall furnish to each employee a statement with every payment of wages, listing hours worked, *rates paid*, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages. *In the case of janitors, the number of units shall be recorded in the place of hours worked*." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-2.2 (emphases added). When an employer provides the required statement to an employee, and the statement ties the employee's payment to the number of units in a building, the statement can serve as evidence that the employee was designated as the janitor. In this case, however, there is no clear evidence that Plaintiff received written notification that his compensation would depend on the number of units at 437 Morris Park Avenue.

> ### f. A Reasonable Jury Could Conclude That Plaintiff *and* Manuel Almonte Referred to Themselves as "Superintendents"

If a worker in a residential building holds himself out as the "janitor" or "superintendent," that fact may help support a conclusion that the worker was

designated as the janitor.  By the same token, if an employer in the building service industry tells a third party (such as a tenant or a vendor) that one particular employee is the "janitor" or "superintendent" of a building, that may be evidence that the employer made a pre-litigation choice to treat the employee as the janitor.

In this case, there is some evidence that Plaintiff referred to himself as the "superintendent." (Weinberger Decl., Ex. E at 51 (Nestor Almonte testimony acknowledging that he identified himself as the "superintendent" to "anyone that had to do with the business")).  This evidence counsels in favor of a finding that Plaintiff had been designated as the janitor of 437 Morris Park Avenue.  At the same time, however, there is evidence that Manuel Almonte told his fellow employees that *he* was the superintendent.  (*See* Valletti Decl., Ex. 1 at 54-56).  As a result, a reasonable jury could conclude that both Plaintiff and Manuel Almonte considered themselves the superintendent of their building.  This conclusion would undercut any suggestion that Defendants had designated *one* employee to be the janitor.

### g.    The Court Will Not Consider the Fact That Plaintiff Was "Responsible" for the Morris Park Avenue Property

Defendants place great weight on the fact that Plaintiff "was the person responsible for [437 Morris Park Avenue]." (Def. Br. 8; *see id.* at 9 ("Klahr, Tabak and Finkelstein all stated in their depositions that Plaintiff . . . was responsible for the building.")).  In the Court's view, however, the text of the Building Service Order does not suggest that the application of the "janitor" rule should turn on whether an employee is "responsible for" a particular

21

building, however that phrase is defined.  Crucially, the Building Service Order does not define a "janitor" as a person with any kind of authority or responsibility.  Rather, the order provides that a "janitor" may be *any person* "'employed to render *any physical service* in connection with the maintenance, care or operation of a residential building.'"  *Koljenovic*, 999 F. Supp. 2d at 401 (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4) (emphasis in original). Thus, an employer cannot say that it "designate[d]" an employee as a janitor merely by giving the employee a significant amount of responsibility or control over a building.

### h.     The Court Cannot Resolve the Janitor Designation Issue as a Matter of Law

A reasonable jury could choose to give great weight to findings that: Plaintiff and his son were both living and working in the same building; Defendants were paying Plaintiff and his son a fixed weekly salary, regardless of the hours they worked; and Defendants did not keep adequate records of Plaintiff's compensation.  A reasonable jury could also decide to discount Plaintiff's representations that he was the superintendent of 437 Morris Park Avenue because Plaintiff's son made similar representations.  Thus, considering all of the relevant factors, a reasonable jury could conclude that Defendants did not made a pre-litigation choice to treat Plaintiff (or his son) as the janitor of 437 Morris Park Avenue.  For that reason, Defendants are not entitled to summary judgment on Plaintiff's overtime and minimum wage claims under the NYLL.

22

### i.      Even If Plaintiff Were the Janitor of 437 Morris Park Avenue, He Could Still Maintain His Minimum Wage and Overtime Claims Under the NYLL

Even if Plaintiff were clearly the janitor of 437 Morris Park Avenue, there would still be factual issues left for the jury to resolve.  Plaintiff and Manuel Almonte testified that they were compensated with a single check, written in Manuel's name.  (*See, e.g.*, Weinberger Decl., Ex. E at 64 (Nestor Almonte testimony that "[t]he pay would be given to my son, and we would divide the check"); *id.* at 191 ("[T]here was two people working and only one would receive the check."); Valletti Decl., Ex. 1 at 43 (Manuel Almonte testimony that "[w]e were both the super, but we were only getting one check under [Manuel's] name.")).  If the jury believed this testimony, it would have to decide: (i) what portion of the check was compensation for work performed by Plaintiff and what portion was compensation for work performed by his son; and (ii) whether the portion of the check that was compensation for Plaintiff's work was sufficient to meet the minimum salary requirements for janitors.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 141.  Defendants have not identified evidence that provides a clear answer to these questions.

### j.      Even If Plaintiff Could Not Maintain Any Wage and Hour Claims Under the NYLL for the Work He Performed at 437 Morris Park Avenue, He Could Still Maintain Wage and Hour Claims for the Work He Performed at Other Locations

Finally, even if Plaintiff could not maintain any wage and hour claims under the NYLL for work he performed at the Morris Park Avenue property, he could still maintain his wage and hour claims for the work he performed at

other buildings managed by Defendants.  Plaintiff testified that, in addition to his work at Morris Park Avenue, he also worked at other locations.  (*See, e.g.*, Weinberger Decl., Ex. E at 43, 85, 230).  For example, he specifically testified that, in 2013, he worked at 1195 Sherman Avenue.  Regardless of whether Plaintiff was the janitor of 437 Morris Park Avenue, he can still argue that he did not receive adequate wages or overtime for the hours he worked at other properties.  *See Koljenovic*, 999 F. Supp. 2d at 402 (granting a summary judgment motion "except as it pertains to plaintiffs' claim for compensation for work performed in buildings other than those in which they were the resident superintendents").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Clerk of Court is directed to terminate Docket Entry 69.  The parties shall appear for a pretrial conference on December 16, 2015, at 2:30 p.m., in Courtroom 618 of the Thurgood Marshall Courthouse, to discuss a trial schedule for this matter.

SO ORDERED.

Dated:      November 24, 2015
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge